**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------------X
FAIRFIELD FINANCIAL MORTGAGE
GROUP, INC.,

       Plaintiff,     **MEMORANDUM OF**
                **DECISION AND ORDER**
     -against-     11-CV-3802 (ADS) (ETB)

JAMES R. LUCA, DONATO QUINTO,
CANDICE GIACCONE, MEDALLION
ABSTRACT, LLC, CARLO DELLAPINA,
MICHAEL J. MOBERG, MOBERG &
ASSOCIATES, PLLC, SHAW ELITE, LLC,
SHAW OPERATIONS, LLC, MARIA
TARASCO, AND SPM AGENCY LTD.,

        Defendants.
------------------------------------------------------------X

**APPEARANCES:**

**Law Offices of Michael A. Haskel**
*Attorneys for the plaintiff*
167 Willis Avenue
Mineola, NY 11501
  By: Michael A. Haskel, Esq.,
    Brandon M. Zlotnick, Esq., Of Counsel

**James R. Luca,** *pro se*
2215 Sherman Avenue
N. Merrick, NY 11566

**Kenneth S. Pelsinger, P.C.**
*Attorneys for defendant Candice Giaccone*
3601 Hempstead Turnpike, Suite 305
Levittown, NY 11756
  By: Kenneth S. Pelsinger, Esq., Of Counsel

**LaVallee & Lavallee, P.C.**
*Attorneys for defendants Medallion Abstract, LLC and Carlo Dellapina*
4 West Gate Road
Farmingdale, NY 11735
  By: Keith LaVallee, Esq., Of Counsel

**Michael J. Moberg,** *pro se*
157 Putnam Avenue
Freeport, NY 11520

**Maria Tarasco,** *pro se*
24 Buckingham Drive
Holbrook, NY 11741

**NO APPEARANCE**
Moberg & Associates, PLLC, Shaw Elite, LLC, Shaw Operations, LLC

**SPATT, District Judge**.

## I. BACKGROUND

The plaintiff, Fairfield Financial Mortgage Group, Inc. ("Fairfield"), a Connecticut corporation, was a residential mortgage lender and broker with a branch office located at 333 Earle Ovington Boulevard, Uniondale, New York ("Fairfield Uniondale Branch"). Shaw Mortgage Group, Inc. ("Shaw"), a New York corporation, was also a residential mortgage broker, with a branch office located at 2550 Hempstead Turnpike, East Meadow, New York ("Shaw East Meadow Branch"). Defendant James Luca ("Luca") is a former employee of both Fairfield and Shaw.

There is no dispute that, in or about April of 2005, Luca commenced employment at Fairfield's Uniondale Branch, and that, as of July of 2006, Luca was employed by Shaw at the Shaw East Meadow Branch. The facts surrounding whether and to what extent Luca owed duties to Fairfield, even while employed by Shaw, are disputed, and are the subject of another litigation currently pending before the Honorable Joanna Seybert, Fairfield Financial Mortgage Group, Inc. v. Luca, et al., 06-CV-5962 (JS)(WDW), referred to by the parties as the "Disloyalty Case".

In the Disloyalty Case, Fairfield alleges that, while employed as a branch manager of Fairfield's Uniondale Branch, Luca breached his fiduciary duty to Fairfield by utilizing Fairfield's resources to divert business to Shaw, as well as other companies he allegedly owned

and controlled, and to set up the Shaw East Meadow Branch. Also in the Disloyalty Case, Fairfield asserted a claim directly against Shaw for unfair competition based on the alleged misconduct of Luca and other former employees of the Fairfield Uniondale Branch. On October 19, 2009, a default was entered against Shaw in the Disloyalty Case.

Following Shaw's default in the Disloyalty Case, on August 1, 2011, Fairfield and Shaw entered into an "Agreement and Assignment of Claims", whereby, Shaw assigned to Fairfield "all claims, demands, and causes of action of whatever kind and nature that Shaw has had, now has, or may have against any person or entity, whether based on common law, statute, agreement, or otherwise ("Assigned Claims"), except that this Assignment shall not include any claims Shaw may have against Robert Hilsby, Cynthia, or Steven Hilsby". (Assignment Agreement ¶ 3.) Although the Disloyalty Case is referenced in the Assignment Agreement, and the parties state that they "are desirous of settling the various disputes among them", Fairfield did not release Shaw from the claims asserted against it in the Disloyalty Case. Rather, the consideration for the assignment is the release of a judgment against Shaw by Wells Fargo that Fairfield had obtained through a separate agreement with Wells Fargo; the withdrawal by Fairfield of a subpoena to depose Shaw in the Disloyalty Case, without prejudice to Fairfield's right to renew; and $1,500 payable to Shaw or its attorney within ten days and an agreement by Fairfield to "not execute upon, restrain, or otherwise impair the use of said funds by Shaw" (Assignment Agreement ¶ 9).

The Assignment Agreement was executed by Charles Levesque, the CEO and President of Fairfield, and Robert Hilsby ("Hilsby"), the Executive Vice-President of Shaw. Subsequently, counsel for Fairfield, Michael A. Haskel, issued a check to Hilsby for $1,500 from his escrow

account in satisfaction of Fairfield's payment obligation in the Assignment Agreement ("the escrow check").

According to Luca, after Hilsby entered into the Assignment Agreement, on August 23, 2011, he and Hilsby entered in to a "Release and Hold Harmless Agreement", whereby Hilsby "authorize[d]" Luca to accept a $1,500 check, and Luca "authorize[d]" the $1,500 check to be deposited in his account. The check that was the subject of this agreement purportedly was the $1,500 escrow check written from Haskel's escrow account. Luca contends that the "Release and Hold Harmless Agreement" was related to an earlier "Hold Harmless Agreement" that he and Hilsby signed on December 1, 2008 (collectively the "Hold Harmless Agreements"). In the Hold Harmless Agreement, Luca and Hilsby both agreed to "indemnify and hold harmless" the other "from any losses, liability or litigation arising from any financial business dealings and/or any litigation . . . prior to and/or following the business close of December 1, 2008".

On August 5, 2011, Fairfield commenced this action as the assignee of Shaw's claims against Luca and the other above-named defendants, alleging that they engaged in a fraudulent scheme to defraud third parties involved in residential loan transactions and to divert Shaw's business to companies allegedly owned and controlled by Luca in violation of the Racketeer Influenced and Corrupt Organizations Act of 1970, 18 U.S.C. §§ 1961-1968 ("RICO") and New York state law.

Presently before the Court are two motions. The first is a motion by Luca to disqualify counsel for Fairfield, Michael A. Haskel, Esq., who also represents Fairfield in the Disloyalty Case. The second is a motion by Fairfield for sanctions pursuant to Federal Rule of Civil Procedure 11 based on Luca's filing of the motion to disqualify Haskel. For the reasons set forth below, the Court denies both motions.

4

## II.  MOTION TO DISQUALIFY

### A.  Legal Standard on a Motion to Disqualify

"The authority of federal courts to disqualify attorneys derives from their inherent power to 'preserve the integrity of the adversary process.'" Hempstead Video, Inc. v. Incorporated Village of Valley Stream, 409 F.3d 127, 132 (2d Cir. 2005) (citing Bd. of Educ. v. Nyquist, 590 F.2d 1241, 1246 (2d Cir. 1979)). In exercising this power, the Court must "attempt[ ] to balance a client's right freely to choose his counsel against the need to maintain the highest standard of the profession." Hempstead Video, Inc., 409 F.3d at 132 (internal quotations and citations omitted).  In the Eastern District, ethical standards are governed by the New York State Rules of Professional Conduct.  See Local Civil Rule 1.3.

Whether or not disqualification is warranted is subject to the court's discretion.  Cresswell v. Sullivan & Cromwell, 922 F.2d 60, 72 (2d Cir. 1990). In that regard, given the "immediate adverse effect on the client by separating him from counsel of his choice, and that disqualification motions are often interposed for tactical reasons, and inevitably cause delay," Nyquist, 590 F.2d at 1246, the Court must demonstrate reluctance in granting motions to disqualify counsel.  See, e. g., W.T. Grant Co. v. Haines, 531 F.2d 671 (2d Cir. 1976). As the Second Circuit has advised:

> when dealing with ethical principles, ... we cannot paint with broad strokes. The lines are fine and must be so marked. Guideposts can be established when virgin ground is being explored, and the conclusion in a particular case can be reached only after painstaking analysis of the facts and precise application of precedent.

Fund of Funds, Ltd. v. Arthur Andersen & Co., 567 F.2d 225, 227 (2d Cir. 1977) (quoting United States v. Standard Oil Co., 136 F. Supp. 345, 367 (S.D.N.Y. 1955)).

**B. Application to Luca's Motion to Disqualify**

On November 23, 2011, Luca filed a motion to disqualify Haskel from representing Fairfield in the instant case. The first twenty-three paragraphs of Luca's Affidavit and a large portion of his motion were directly lifted from a previous motion to disqualify Haskel that Luca filed in the Disloyalty Case. In that motion, he argued that: (1) Haskel either concurrently or previously represented Luca and Fairfield in another case pending before Judge Seybert, Tvili v. Fairfield Financial Mortgage Group, Inc., et al., No. 06-CV-162 (JS)(AKT); and (2) Luca had confidential conversations with Haskel with respect to his employment with Fairfield, which were directly related to the dispute. At the time, Luca was represented by an attorney, Alan J. Reardon, Esq. In an order dated September 30, 2009, Judge Seybert denied the motion to disqualify Haskel in the Disloyalty Case, stating:

> The Court has reviewed Defendant Luca's arguments and finds that there is absolutely no basis for disqualification of Plaintiff's counsel. At the outset, the Court notes that Tvili was closed on July 16, 2007, and therefore is not currently pending before the Court. See Tvili, No. 06-CV-0162, Docket No. 44. Additionally, Luca was not a named Defendant in the Tvili matter. There is no evidence to show that Luca was a former client, nor has Luca shown that the subject matter of the Tvili case is substantially similar to the subject matter here, or that Haskel had access to relevant privileged information. Simply put, there is no evidence of successive representation.
>
> Nor has Luca provided the Court with any other basis for disqualification. Haskel's representation of Fairfield at a time when Luca was an employee at Fairfield does not disqualify Haskel from representing Fairfield against Luca. "Unless the parties have expressly agreed otherwise in the circumstances of a particular matter, a lawyer for a corporation represents the corporation, not its employees." Talvy v. American Red Cross, 205 A.D.2d 143, 149 (N.Y. App. Div. 1st Dep't 1994). Luca has not presented any evidence to dispute the fact that Haskel represented Fairfield in the Tvili matter, and not Luca. It would be unreasonable for Luca to believe that any information he provided to Haskel in the course of Haskel's representation of the corporation would be kept confidential. See Wayland v. Shore

6

> Lobster & Shrimp Corp., 537 F. Supp. 1220, 1223 (S.D.N.Y.
> 1982) ("[Plaintiff's] argument that the firm must be disqualified
> because it may have been exposed to confidential information from
> [plaintiff] while he was employed . . . is unpersuasive since, in the
> circumstances of [the law firm's] representation, it is clear that the
> firm was representing the corporation and thus [plaintiff] could not
> have reasonably believed or expected that any information given to
> the firm would be kept confidential from the other shareholders or
> from the corporation as an entity."). Thus, the Court DENIES
> Luca's motion for disqualification of Plaintiff's counsel.

(Disloyalty Case, DE 148 at 11–12.) In addition, Judge Seybert granted a motion by Fairfield to sanction Luca's attorney for filing a frivolous motion to disqualify. However, Judge Seybert denied Fairfield's motion to impose any sanctions on Luca personally. (Id. at 13).

The allegations that served as the basis for Luca's motion to disqualify Haskel in the Disloyalty Case are largely irrelevant in this case, where Fairfield is suing Luca as the assignee of Shaw's claims, based on injuries to Shaw. Although Fairfield includes factual allegations regarding Luca's conduct while employed at Fairfield as background support for the RICO claims, the fact that Luca's conduct while at Fairfield might be relevant in this case does not render Haskel unqualified. The Court agrees with Judge Seybert that "there is no evidence of successive representation" and that "[i]t would be unreasonable for Luca to believe that any information he provided to Haskel in the course of Haskel's representation of [Fairfield] would be kept confidential". (Disloyalty Case, DE 148 at 11–12.) Accordingly, the Court similarly finds that Luca's prior dealings with Haskel while a Fairfield employee do not provide a basis for Haskel's disqualification.

Luca's newly asserted arguments similarly lack merit. First, Luca argues that because he was the Operations Manager of the Shaw East Meadow Branch, Shaw cannot assert claims against him. However, this argument goes to the merits of this case, not to whether Haskel should be disqualified from representing Fairfield in the pursuit of those claims.

7

Next, Luca contends that Haskel should be disqualified from representing Shaw's interest because of the overlap between the claims asserted against Shaw and Luca in this case and the Disloyalty Case. "'As a matter of professional responsibility, an attorney owes a duty of loyalty to his client . . . not to divulge confidential communications ... and not to accept representation of a person whose interests are opposed to the client.'" Ehrich v. Binghamton City Sch. Dist., 210 F.R.D. 17, 23 (N.D.N.Y. 2002) (quoting In re Agent Orange Prod. Liab. Litig., 800 F.2d 14, 17 (2d Cir. 1986)). However, in this case, Haskel is not representing Shaw. Indeed, Shaw remains a defaulting defendant in the Disloyalty Case. Rather, Haskel is representing Fairfield's interest in recovering any damages Luca and the other defendants may have caused to Shaw after August 1, 2007. Arguably, under the Assignment Agreement, Shaw may be required to provide Fairfield with information for the purposes of prosecuting this case that Fairfield can use against Shaw and Luca in the Disloyalty Case. Regardless, because Haskel does not represent Shaw or Luca, this does not create a conflict of interest requiring disqualification.

In addition, by limiting its claims in the instant case to conduct occurring after August 1, 2007, Fairfield has chosen to forgo seeking damages for any alleged injuries to Shaw during an approximately one year overlap ending July 31, 2007, where Fairfield and Shaw could dispute whose business Luca allegedly was diverting, and therefore who is entitled to damages. Although Haskel's failure to pursue damages for injuries to Shaw during that time period may be adverse to Shaw's interest, the Assignment Agreement gave Fairfield the right to decide which Shaw claims to pursue and the right to pursue its own interests over those of Shaw.

In his reply brief, Luca asserted two new arguments based on the Hold Harmless Agreements and the escrow check. Luca attached a copy of the "Release and Hold Harmless Agreement" and the escrow check to his reply affidavit in support of his motion to disqualify

Haskel. Luca did not provide the Court with a copy of the Hold Harmless Agreement in support of the instant motion. However, he did attach it as an exhibit to his Rule 56.1 Statement. Although Luca improperly asserted the arguments based on these documents in his reply submission, because Fairfield addressed them in their motion for sanctions, the Court discerns no prejudice to Fairfield in the Court addressing these arguments, particularly where, as here, the Court finds them to be without merit.

First, Luca argues that Haskel should be disqualified because the Assignment Agreement assigned Shaw's claims to him personally, not to Fairfield. There is simply no evidence to support this claim. The Assignment Agreement was signed by the principals of Fairfield and Shaw respectively, and clearly states that Shaw's claims are being assigned to Fairfield. The fact that Haskel issued a check from his escrow account in connection with the Assignment Agreement does not raise the appearance of impropriety. To the contrary, it indicates that he was acting on behalf of Fairfield, not himself. See In Re Robert Plan of New York Corp., 456 B.R. 150, 160 (Bankr. E.D.N.Y. 2011) ("[U]nder New York law, the nature of an escrow account requires the escrow agent to hold the funds for the benefit of the client and the escrow agent is precluded from accessing those funds for its own use without the direction of the client.").

Finally, Luca argues that Haskel's representation of Fairfield in this action is somehow improper because Hilsby gave Luca the escrow check in consideration for entering into the Hold Harmless Agreements. However, Luca does not assert or suggest that Haskel was in any way involved in this alleged transaction. In addition, as discussed in the context of the sanctions motion, the parties dispute the authenticity of the documents underlying this claim. However, even assuming that Hilsby did enter into the Hold Harmless Agreements with Luca, and that Haskel was aware of or complicit in this action, the proper party to complain would be Fairfield,

9

not Luca, as such an agreement to circumvent the Assignment Agreement would be contrary to Fairfield's interest.  Ultimately, the possibility of a future dispute between the parties to the Assignment Agreement, or between Fairfield and Haskel, has no bearing on whether Haskel's representation of Fairfield in the instant suit against Luca is improper.  Accordingly, the Court denies Luca's motion to disqualify Haskel.

### III.  MOTION FOR SANCTIONS

Fairfield seeks sanctions against Luca pursuant to Federal Rule of Civil Procedure 11(b) ("Rule 11(b)"), alleging that Luca:  (1) filed the disqualification motion for the improper purpose of harassing Fairfield and its counsel in violation of Rule 11(b)(1); (2) advanced legal contentions in the motion to disqualify that were not warranted by existing law in violation of Rule 11(b)(2); and (3) made unsupported factual allegations in the motion to disqualify in violation of Rule 11(b)(3).  Based on these alleged violations of Rule 11, Fairfield seeks a monetary sanction on Luca in the amount of $2,800, constituting the amount spent on attorney's fees in responding to the motion to disqualify and filing the motion for sanctions.

Rule 11 governs motions for frivolous filings. "A pleading, motion or other paper violates Rule 11 either when it has been interposed for any improper purpose, or where, after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading is well grounded in fact and is warranted by existing law or good faith argument for the extension, modification or reversal of existing law." See Kropelnicki v. Siegel, 290 F.3d 118, 131 (2d Cir. 2002) (internal citations and quotations omitted).  Courts impose Rule 11 sanctions with discretion and caution. See Caisse Nationale de Credit Agricole-CNCA v. Valcorp., 28 F.3d 259, 264 (2d Cir. 1994); Puccio v. Town of Oyster Bay, 229 F. Supp. 2d 173, 178 (E.D.N.Y. 2002).

The Court has reviewed the parties' arguments and declines to award sanctions against Luca based on his filing of the motion to disqualify. Although the Court finds that Luca's motion to disqualify is unwarranted, the Court does not find that Luca, who is *pro se*, filed the motion with an improper purpose or in bad faith. However, Luca is warned that the filing of another such motion will be considered to be frivolous and may result in monetary sanctions under Rule 11.

As a final matter, the Court finds troubling Fairfield's contention that Luca's arguments in the motion to disqualify based on the Hold Harmless Agreements and the escrow check "are, at best for Luca, frivolous and irrelevant, but are quite possibly based on the fabrication of documentation filed with this Court". (Fairfield Br. at 10.) In this regard, Fairfield questions the authenticity of the Hold Harmless Agreements. The falsification of documents, at the very least, constitutes sanctionable behavior. However, Fairfield does not provide any evidence to support this serious accusation other than the fact that Luca has been unable to provide the originals for expert analysis. Even without an original, Fairfield could have submitted other evidence to support its contention, such as an affidavit from Hilsby denying that he signed the Hold Harmless Agreements. Thus, in its discretion, the Court declines to award sanctions on this ground. Nevertheless, a potential fraud on this Court, or the allegation of one, is not a matter that this Court takes lightly. Accordingly, the Court finds that an evidentiary hearing is warranted on the authenticity of the Hold Harmless Agreements.

### IV. CONCLUSION

For the foregoing reasons, it is hereby:

**ORDERED**, that Luca's motion to disqualify Fairfield's counsel, Michael A. Haskel, Esq., is denied, and it is further

11

**ORDERED**, that the Fairfield's motion for sanctions against Luca is denied, and it is further

**ORDERED**, that Fairfield and Luca are directed to appear for an evidentiary hearing before the Court on the authenticity of the Hold Harmless Agreements on Thursday, August 9, 2012 at 9:00am, and it is further

**ORDERED,** that the Clerk of the Court is directed to mail a copy of this decision and order to the *pro se* defendants via Certified Mail.

**SO ORDERED.**
Dated: Central Islip, New York
July 25, 2012

                                                                */s/ Arthur D. Spatt*
                                                             ARTHUR D. SPATT
                                                United States District Judge