9/19/12
Handed
up by counsel
Pelsiger

## AGREEMENT AND ASSIGNMENT OF CLAIMS

AGREEMENT AND ASSIGNMENT OF CLAIMS ("Agreement") made this 1 day of AUG, 2011, by and between Fairfield Financial Mortgage Group, Inc. (hereinafter referred to as "Fairfield") and Shaw Mortgage Group, Inc. (hereinafter referred to as "Shaw" or "Assignor").

WHEREAS Shaw was a New York mortgage broker that operated in the State of New York; and

WHEREAS Fairfield was a Connecticut mortgage lender and mortgage broker with a branch office in Uniondale, New York; and

WHEREAS in an action commenced by Fairfield entitled *Fairfield Financial Mortgage Group, Inc. v. Luca et al.*, U.S.D.C., E.D.N.Y., CV 06-5962 (JS) (WDW) ("Fairfield I"), Fairfield sued Shaw among other defendants; and

WHEREAS, Fairfield obtained, by assignment from Wells Fargo Financial Leasing, Inc., a Judgment against Shaw under Supreme Court, County of Nassau, State of New York Index No. 08-19642 ("Wells Fargo Judgment"); and

WHEREAS, by Subpoena Duces Tecum returnable July 26, 2011, Shaw was to be examined under oath and said subpoena contained a restraining notice; and

WHEREAS, the parties are desirous of settling the various disputes among them, it is therefore agreed as follows:

1. That Fairfield, as assignee of the Wells Fargo Judgment, hereby releases so much of the restraining order contained in the Subpoena Duces Tecum as to permit Shaw, its officers and directors to enter into this agreement.

2. That the Subpoena is hereby withdrawn by Fairfield without prejudice to renew.

1

3. (a) Shaw Mortgage Group, Inc. ("Shaw" or "Assignor") hereby assigns and transfers to Fairfield, and/or, at Fairfield's election, to Fairfield's legal representatives and/or designees and/or assigns, or to any of them, or to any combination of them, one or more of whom shall be referred to as "Assignees," for their use and benefit, all claims, demands, and causes of action of whatever kind and nature that Shaw has had, now has, or may have against any person or entity, whether based on common law, statute, agreement, or otherwise ("Assigned Claims"), except that this Assignment shall not include any claims Shaw may have against Robert Hilsby, Cynthia Hilsby, or Steven Hilsby. Assignees shall assume none of Shaw's liabilities, debts, obligations, or responsibilities, and shall have no responsibility to Shaw whatsoever, except as expressly set forth herein.

(b) At Fairfield's sole election, Fairfield shall have the right to direct Shaw to prosecute in Shaw's own name and at Fairfield's cost and expense, by counsel chosen by Fairfield, any claim that would otherwise fall within the category of Assigned Claims("Shaw Prosecuted Claim"), and Fairfield shall be entitled to any recovery realized by settlement or award in connection with a Shaw Prosecuted Claim. Shaw shall not be entitled to any portion of such recovery and the proceeds of any such recovery shall be paid to Fairfield, or, if paid to Shaw, shall be turned over by Shaw to Fairfield ("Assigned Proceeds of Shaw Prosecuted Claim"). In the event a counterclaim is brought against Shaw in connection with any case brought on a Shaw Prosecuted Claim, Fairfield shall provide Shaw with a defense of any such counterclaim, but no indemnification, and such counterclaim will be treated in the same way as any counterclaim brought upon an Assigned Claim as provided in subparagraph 5(b). Any attorney prosecuting the Shaw Prosecuted Claims will represent Shaw, subject to Fairfield's right

2

to settle, discontinue, or prosecute the Shaw Prosecuted Claims and Fairfield's right to Assigned Proceeds of Shaw Prosecuted Claims.

4. In any litigation, arbitration, mediation or other action brought upon the Assigned Claims, or any of them, any attorney hired by the Assignees shall represent the Assignees exclusively, and not any other person or party, and no such attorney shall be deemed to represent any person or party other than Assignees. It is acknowledged that Fairfield and its counsel have not given any legal advice to Shaw or any other person or party, and that if such legal advice were to have been given, that Shaw or such other person or party would not be entitled to rely upon same. It is the intention of Fairfield and Fairfield's counsel pursuing the Assigned Claims to make no statements and give no advice in the future, to Shaw or any other person or party, and Shaw acknowledges that Shaw and any such other persons or parties shall have no right to rely upon any statements or advice given by Fairfield or Fairfield's counsel in the future.

5. (a) If, and only if, Fairfield receives, by settlement or award, in satisfaction of the Assigned Claims, a cumulative amount greater than $1,000,000, Shaw will be entitled to the following:

    (1) five percent (5%) of all amounts received, by settlement or award, in satisfaction of the Assigned Claims, to the extent such amounts are greater than $1,000,000, and no greater than $1,250,000; and

    (2) ten percent (10%) of all amounts received, by settlement or award, in satisfaction of the Assigned Claims, to the extent such amounts are greater than $1,250,000.

3

This subparagraph 5(a) shall not apply to any amounts received in connection with Shaw Prosecuted Claims, as to which Shaw shall be entitled to no portion of any recovery pursuant to subparagraph 3(b).

Shaw recognizes that it will not recover any portion of the proceeds in connection with any Shaw Prosecuted Claim, and that there is a substantial probability that Shaw will not recover any portion of the proceeds in connection with any Assigned Claim. Shaw shall have no right to object or make any claim or demand by virtue of its receiving no portion of any recovery in connection with Assigned Claims or Shaw Prosecuted Claims.

(b) Notwithstanding that Shaw represents that it is unaware of any potential counterclaims that may be asserted against it, in the event that any counterclaims are interposed against Shaw in the lawsuit brought by the Assignees on the Assigned Claims, Fairfield agrees to provide Shaw, at Fairfield's expense, with a defense of such counterclaims. However, Fairfield will have no duty to indemnify Shaw with respect to such counterclaims. The choice of counsel to defend the counterclaims will be that of Fairfield. Fairfield will have sole authority at its sole discretion to settle any such counterclaims, or to bring such counterclaims to trial, but Shaw will be advised at least twenty-one (21) days prior to any such resolutions, provided same is practical, or if less notice is given, Shaw's consent must be obtained.

6. Shaw and its principals agree to cooperate fully with Assignees and Assignees' attorney in the prosecution of the Assigned Claims, and in connection with the defense of counterclaims, and to provide complete and truthful information and documents to the best of their ability. Shaw and its principals also agree to cooperate fully in the pursuit of the Shaw Prosecuted Claims. Except as to the representations and warranty made by Shaw in Paragraphs 7, 15, or elsewhere herein, an assertion of any constitutional rights by Shaw in good faith shall

4

not be considered a breach hereunder. Shaw agrees to retain and preserve all documentation currently in its possession that may be relevant to the Assigned Claims or Shaw Prosecuted Claims.

7. Shaw represents and warrants the following:

(a) that apart from obligations listed in the attached Exhibit A, Shaw knows of no other monetary obligations it owes to third parties, except those owed to Fairfield arising from the litigation in Fairfield I referenced in the "wherefore" clause hereof;

(b) that it is and will continue to be Shaw's position that Shaw did not divert any loans from Fairfield to Shaw;

(c) that until recently, Shaw was unaware that after August 1, 2007, Shaw's former branch office in East Meadow, New York (the "Shaw East Meadow Branch Office") was used by James Luca ("Luca") and others to close loan transactions in the name of Shaw, except as to those loan transactions listed in Exhibit B;

(d) that until recently Shaw was unaware that Michael J. Moberg, Luca, or Carlo Dellapina had an interest in Medallion Abstract, LLC ("Medallion"), or were receiving payments from Medallion, or that anyone working at the Shaw East Meadow Branch Office was receiving payments, directly or indirectly, from Medallion;

(e) that until recently, Shaw was unaware that SPM Agency Ltd. received compensation in connection with title work that Medallion was retained to perform; and

(f) that Shaw has no known assets other than the Assigned Claims.

8. Provided there is no material breach of this Agreement, Fairfield agrees not to seek enforcement of any judgment obtained against Shaw, against Robert Hilsby, Cynthia Hilsby or Steven Hilsby either individually or as officers, shareholders, directors or employees of Shaw

5

and shall commence no action against any of them under any theory whatsoever, it being the intention of the parties to release them from any claims.

9. That Fairfield shall pay to Shaw or its attorney the sum of $1,500 with ten (10) days. Fairfield shall not execute upon, restrain, or otherwise impair the use of said funds by Shaw.

11. The undersigned are not relying upon any representation, oral or otherwise, express or implied, other than those specifically set forth in this Agreement, in agreeing to execute and deliver this Agreement.

12. This Agreement constitutes the entire and only agreement between the Parties hereto, and shall not be modified or changed in any manner except mutual consent in writing signed by a duly authorized representative of each of the Parties hereto.

13. This Agreement shall be deemed as having been drafted by both Parties, and shall not be construed against any draftsman.

14. This Agreement, and any claim, dispute, or proceeding arising therefrom, shall be governed by the laws of the State of New York, irrespective of conflicts of law principles.

15. Robert Hilsby hereby represents and warrants that he has full authority to act on behalf of Shaw in executing this Agreement and that all directors and other interested parties have consented to his execution of same. Charles Levesque hereby represents and warrants that he has full authority to act on behalf of Fairfield in executing this Agreement and that all directors and other interested parties have consented to his execution of same. Robert Hilsby represents and warrants that he has consulted with legal counsel of Shaw's choosing in connection with the review, negotiation, and execution of this Agreement.

6

16. This Agreement is divisible, and in the event any provision herein is held to be violative of any applicable treaties, statutes, regulations, or common law, such holding will affect only that provision held to be invalid or inoperative, and the remaining portions of this Agreement will remain in full force and effect. In lieu of any such invalid or inoperative provision, there will be added automatically as a part of this Agreement an enforceable provision as similar in terms to the severed provision as may be possible.

IN WITNESS WHEREOF, the parties hereto have affixed their signatures on the day and year first above written.

FAIRFIELD FINANCIAL MORTGAGE GROUP, INC.

By: _____
Charles Levesque

SHAW MORTGAGE GROUP, INC.

By: _____
Robert Hilsby

7