UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
FAIRFIELD FINANCIAL MORTGAGE
GROUP, INC.,

                Plaintiff,

-against-

JAMES R. LUCA, DONATO QUINTO,
CANDICE GIACCONE, MEDALLION
ABSTRACT, LLC, CARLO DELLAPINA,
MICHAEL J. MOBERG, MOBERG &
ASSOCIATES, PLLC, SHAW ELITE, LLC,
SHAW OPERATIONS, LLC, MARIA
TARASCO and SPM AGENCY LTD.,

                Defendant.
----------------------------------------------------------X

MEMORANDUM OF
DECISION AND ORDER
11-CV-3802 (ADS)(ETB)

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ FEB 21 2013 ★

LONG ISLAND OFFICE

## APPEARANCES:

**Law Offices of Michael A. Haskel**
*Attorneys for the Plaintiff*
167 Willis Avenue
Mineola, NY 11501
    By: Michael A. Haskel, Esq.
        Brandon Maxwell Zlotnick, Esq.
        Leonid Gekhman, Esq., Of Counsel

**James R. Luca**
*Defendant pro se*
2215 Sherman Avenue
N. Merrick, NY 11566

**Kenneth S. Pelsinger, PC**
*Attorneys for the Defendant Candice Giaccone*
3601 Hempstead Turnpike
Suite 305
Levittown, NY 11756
    By: Kenneth S. Pelsinger, Esq., Of Counsel

1

**LaVallee & LaVallee, P.C.**
*Attorneys for the Defendants Medallion Abstract, LLC & Carlo Dellapina*
4 West Gate Road
Farmingdale, NY 11735
    By: Keith LaVallee, Esq., Of Counsel

**Michael J. Moberg**
*Defendant pro se*
157 Putnam Avenue
Freeport, NY 11520

**Maria Tarasco**
*Defendant pro se*
24 Buckingham Drive
Holbrook, NY 11741

**NO APPEARANCE:**

Donato Quinto
Moberg & Associates, PLLC
Shaw Elite, LLC
Shaw Operations, LLC
SPM Agency Ltd.

**SPATT, District Judge.**

On August 5, 2011, the Plaintiff Fairfield Financial Mortgage Group, Inc. ("the Plaintiff"), commenced this lawsuit against the Defendants James R. Luca ("Luca"), Donato Quinto ("Quinto"), Candice Giaccone, Medallion Abstract, LLC ("Medallion"), Carlo Dellapina ("Dellapina"), Michael J. Moberg ("Moberg"), Moberg & Associates, PLLC ("Moberg & Associates"), Shaw Elite, LLC ("Elite"), Shaw Operations LLC ("Operations"), Maria Tarasco ("Tarasco") and SPM Agency Ltd. ("SPM," and collectively, "the Defendants"). In this lawsuit, the Plaintiff is seeking to recover damages it allegedly sustained due to, among other things, violations of 18 U.S.C. § 1962(c), 18 U.S.C. § 1962(d). On August 9, 2012, the Clerk of Court noted the defaults of the Defendants Quinto; Elite; Operations and SPM (collectively, "the defaulting Defendants"). On November 26, 2012, the Plaintiff moved for a default judgment

2

pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P. 55"). On December 21, 2012, this Court respectfully referred this matter to United States Magistrate Judge E. Thomas Boyle for a recommendation as to whether the motion for a default judgment should be granted, and if so, (1) whether damages should be awarded, including reasonable attorney's fees and costs, and (2) whether any other relief should be granted.

However, in a letter dated January 25, 2012, the Plaintiff notified Judge Boyle that "the damages against all [the] [D]efendants in [this action] may be interrelated" and that "it would serve the interests of judicial economy to determine damages at the time of trial of this action." (Dkt. No. 97.) Therefore, the Plaintiff "requested that [Judge Boyle] adjourn the [scheduled March 7, 2013] inquest [to determine damages against the defaulting Defendants] until such time when this action is to be tried." (Dkt. No. 97.)

In light of this letter, this Court vacates its December 21, 2012 referral of this matter. Further, for the reasons set forth below, this Court grants the Plaintiff's motion for default judgment and enters a default against the defaulting Defendants. However, the Court reserves decision as to the issue of damages until the time of trial of this action. To date, the defaulting Defendants have not opposed the Plaintiff's motion or otherwise appeared in this action.

## I. BACKGROUND

The Plaintiff, a Connecticut corporation, was a residential mortgage lender and broker with a branch office located at 333 Earle Ovington Boulevard, Uniondale, New York ("Fairfield Uniondale Branch"). Shaw Mortgage Group ("Shaw"), a New York corporation, was also a residential mortgage broker, with a branch office located at 2550 Hempstead Turnpike, East Meadow, New York ("Shaw East Meadow Branch"). Shaw assigned those claims that are the

subject of this action to Fairfield pursuant to a written assignment agreement dated August 1, 2011.

Quinto was the nominal manager and *de facto* assistant branch manager of the Shaw East Meadow Branch from approximately August 1, 2006 to November 14, 2008. According to the Complaint, Quinto participated in a fraudulent scheme that entailed diverting brokerage business from Shaw to Elite and Operations, both of which were wholly owned by Luca and which were never licensed as mortgage brokers ("the Residential Loan Scheme"). In this regard, while the loans were closed using Shaw's license, the mortgage brokerage fees were diverted to Operations and Elite. Quinto participated in these diversions, and after Elite and Operations realized the proceeds of the brokerage and other fees on the diverted loans, they were distributed to Quinto and others.

Further, the Complaint alleges that Quinto was involved in referral of the title abstract business on loans brokered by Shaw to Medallion, an abstract company. Although Dellapina was the nominal owner of Medallion, it was actually beneficially owned by Luca and Moberg and operated by Moberg and Tarasco. The proceeds of Medallion were distributed to Shaw agents as an incentive for their participation in the diversion of brokerage business from Shaw to Elite and Operations.

SPM was another abstract company that allegedly performed all of the production work for Medallion and that was owned by Tarasco and Moberg's wife. The Plaintiff alleged that, apparently, SPM conspired with Quinto, Elite, Operations and the other defendants to defraud Shaw, in that they referred all Shaw East Meadow Branch business to Medallion, and then distributed moneys from Medallion to Luca and Moberg and other Shaw agents at the Shaw East

Meadow Branch in order to obtain their continued loyalty to Elite, Operations and other participants in the fraudulent scheme.

In relevant part, the Plaintiff's Complaint alleges RICO claims against Quinto, Elite, Operations and SPM, as well as New York common law claims for fraud and breach of fiduciary duty against Quinto.

## II. DISCUSSION

### A. Legal Standard

"A default constitutes an admission of all well-pleaded factual allegations in the complaint pertaining to liability." Ehrlich v. Royal Oak Fin. Servs., CV-12-3551 (BMC), 2012 U.S. Dist. LEXIS 159815, at *2 (E.D.N.Y. Nov. 5, 2012) (citing Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992)). "A default also effectively constitutes an admission that the acts pleaded in the complaint violated the laws upon which the claim is based and caused injuries as alleged." Id. However, "[t]he fact that a complaint stands unanswered does not [] suffice to establish liability on its claims: a default does not establish conclusory allegations, nor does it excuse any defects in the plaintiff's pleading." Gunawan v. Sake Sushi Rest., 09-CV-5018, 2012 U.S. Dist. LEXIS 136506, at *9 (E.D.N.Y. Sept. 24, 2012). Rather, "it remains the plaintiff's burden to demonstrate that those uncontroverted allegations, without more, establish the defendant's liability on each asserted cause of action." Id. In addition, the court need not accept those allegations in the Complaint pertaining to the amount of damages. Id.

"In determining whether to grant a motion for default judgment under [Fed. R. Civ. P. 55], courts 'consider the willfulness of the default, the existence of a meritorious defense, and the level of prejudice that the non-defaulting party may suffer should relief be granted.'" Faulk v.

N.Y. City Dep't of Corr., 08 Civ. 1668 (GBD)(MHD), 2012 U.S. Dist. LEXIS 133361, at *4 (S.D.N.Y. Sept. 13, 2012) (quoting Pecarsky v. Galaxiworld.com, Ltd., 249 F.3d 167, 170–71 (2d Cir. 2001)). "A default judgment may not be granted however if the defendant has not been effectively served with process." Id. at *4–5 (citation and internal quotation marks omitted).

### B. Application to the Plaintiff's RICO Claims

In this case, the Plaintiff brings claims against the defaulting defendants under the Racketeer Influenced Corrupt Organization Act ("RICO"), 18. U.S.C. § 1961, *et. seq.* The threshold pleading requirements of a private action under Section 1962 of the RICO statute were set forth in Moss v. Morgan Stanley, Inc., 719 F.2d 5, 17 (2d Cir. 1983), cert. denied, 465 U.S. 1025, 104 S. Ct. 1280, 79 L. Ed. 2d 684 (1984), as follows:

> To state a claim for damages under RICO a plaintiff has two pleading burdens. First, he must allege that the defendant has violated the substantive RICO statute, 18 U.S.C. § 1962 (1976), commonly known as "criminal RICO." In so doing, he must allege the existence of seven constituent elements: (1) that the defendant (2) through the commission of two or more acts (3) constituting a "pattern" (4) of "racketeering activity" (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an "enterprise" (7) the activities of which affect interstate or foreign commerce. 18 U.S.C. § 1962(a)-(c). Plaintiff must allege adequately defendant's violation, of section 1962 before turning to the second burden—i.e., invoking RICO's civil remedies of treble damages, attorneys fees and costs. See Bays v. Hunter Savings Association, 539 F. Supp. 1020, 1023 (S.D. Ohio 1982). To satisfy this latter burden, plaintiff must allege that he was "injured in his business or property by reason of a violation of section 1962."

Id.; see also Zavalidroga v. Cote, 395 F. App'x 737 (2d Cir. 2010).

"For an association of individuals to constitute an enterprise, the individuals must share a common purpose to engage in a particular fraudulent common course of conduct and work together to achieve such purposes." First Capital Asset Mgmt. v. Satinwood, Inc., 385 F.3d 159,

6

174 (2d Cir. 2004); see also 18 U.S.C. § 1961(1)(B). "'Racketeering activity' is broadly defined to encompass a variety of state and federal offenses including, inter alia, murder, kidnapping, gambling, arson, robbery, bribery and extortion." De Falco v. Bernas, 244 F.3d 286, 306 (2d Cir. 2001). "Pattern of racketeering activity" is defined as "at least two acts of racketeering activity . . . within ten years . . . after the commission of a prior act of racketeering activity." 18 U.S.C. § 1961(5). "The compensable 'injury' is 'the harm caused by predicate acts sufficiently related to constitute a pattern.'" Wells Fargo Bank, N.A. v. Nat'l Gasoline, Inc., 10-CV-1762 (RER), 2013 U.S. Dist. LEXIS 6668, at *14 (E.D.N.Y. Jan. 16, 2013) (quoting Sedima S.P.R.L. v. Imrex Co., 473 U.S. 479, 497, 105 S. Ct. 3275, 87 L. Ed. 2d 346 (1985)).

The Court finds that the Plaintiff has established its RICO claims against the defaulting Defendants and is therefore entitled to the entry of a default judgment against the defaulting Defendants on these claims. First, with respect to Quinto, Elite and Operations, the Plaintiff has alleged in its Complaint that, in furtherance of the Residential Loan Scheme, Luca, Quinto, Giacone, Moberg, Elite and Operations formed, and were members of, an association-in-fact enterprise ("the RLS Enterprise"), which had an organizational structure in which the defaulting Defendants and others carried out distinct responsibilities and which functioned as a continuing unit. The Plaintiff further pled that the RLS Enterprise affected interstate commerce by conducting business with lenders in interstate commerce.

In addition, the Plaintiff pled that over the course of a two and a half year period, from May 2006 through November 2008, Quinto participated in the RLS Enterprise by committing several predicate acts of racketeering, including (1) mail fraud in violation of 18 U.S.C. § 1341; (2) money laundering in violation of 18 U.S.C. § 1956; and (3) monetary transactions in

criminally derived property in violation of 18 U.S.C. § 1957. As such, the Plaintiff has sufficiently pled a RICO claim against Quinto.

The Plaintiff has also sufficiently pled that Elite and Operations violated RICO, 18 U.S.C. §§ 1962(c) and (d), on the basis of vicarious liability for the actions of Quinto, Luca and Giaccone. Within the Second Circuit, "courts . . . generally do not impose vicarious liability under RICO unless the corporate . . . defendant is a central figure in the RICO scheme." Makowski v. United Bhd. & Joiners of Am., 08 Civ. 6150 (PAC), 2010 U.S. Dist. LEXIS 77775, at * 21 (S.D.N.Y. Aug. 2, 2010). Thus, "[p]laintiffs seeking to impose vicarious liability must, at a minimum, show that a corporate . . . officer had knowledge of or was recklessly indifferent toward the unlawful activity." Id. Court will also "consider other factors, such as the number of high-level employees involved in the racketeering activity, their degree of participation in the racketeering activity, whether these employees themselves committed the alleged predicate acts, and whether the corporation substantially benefited from the racketeering activity." Id. at 21–22.

Here, the Plaintiff has pled that Luca was the sole shareholder of Elite and Operations and he, Giaccone and Morberg committed racketeering acts as agents of Elite and Operations. The Plaintiff has further pled Elite and Operations participated in and benefited from these acts. Accordingly, assuming the allegations in the Complaint are true, the Plaintiff has met its burden in order to plea a RICO claim based on vicarious liability against Elite and Operations.

Moreover, the Plaintiff has sufficiently pled conspiracy pursuant to 18 U.S.C. § 1962(d) against all the defaulting Defendants, in that the Plaintiff has alleged that the defaulting Defendants conspired with others, pursuant to which they agreed to commit the aforesaid predicate acts of racketeering. With respect to SPM, the Plaintiff has alleged that SPM, through

the acts of Moberg and Tarasco, participated in the RLS Enterprise by conspiring to defraud Shaw through the diversion of mortgage proceeds to entities impersonating Shaw, such as Elite and Operations. Again through the acts of Moberg and Tarsco, SPM is also alleged to have received additional title fees from closings, not disclosed to the borrowers. In this way, SPM perpetuated the Residential Loan Scheme. As a member of the conspiracy, SPM is liable for all damages resulting from the conspiracy. See Allstate Ins. Co. v. Polack, CV 08-0565 (ADS) (ETB), 2012 U.S. Dist. LEXIS 141927, at *19 (E.D.N.Y. Sept. 12, 2012), adopted by, 2012 U.S. Dist. LEXIS 140942 (E.D.N.Y. Sept. 28, 2012). ("In a RICO conspiracy, defendants are jointly and severally liable for all of the plaintiff's damages, even those with which an individual defendant was not personally involved.") (quoting GEICO v. Infinity Health Prods., Ltd., 10-CV-5611 (JG) (JMA), 2012 U.S. Dist. LEXIS 58058, at *25–26 (E.D.N.Y. Apr. 6, 2012), adopted by, 2012 U.S. Dist. LEXIS 58060 (E.D.N.Y. Apr. 25, 2012)). Therefore, the Plaintiff has satisfactorily pled a RICO claim against SPM.

### C. Application to the Plaintiff's Common Law Claims Against Quinto

The Plaintiff also brings causes of action for common law fraud and breach of fiduciary duty against Quinto. "Under New York law, to state a claim for fraud a plaintiff must demonstrate: (1) a misrepresentation or omission of material fact; (2) which the defendant knew to be false; (3) which the defendant made with the intention of inducing reliance; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff." Solow v. Citigroup, Inc., 12-2499-cv, 2013 U.S. App. LEXIS 903, at *5 (2d Cir. Jan. 15, 2013) (quoting Wynn v. AC Rochester, 273 F.3d 153, 156 (2d Cir. 2001)). "To state a claim for breach of fiduciary duty in New York, a plaintiff need only allege that the duty existed and that it was breached." Muller-Paisner v. TIAA, 289 F. App'x 461 (2d Cir. 2008). "A fiduciary relationship exists when one

person is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation." Schandler v. New York Life Ins. Co., 09 Civ. 10463 (LMM), 2011 U.S. Dist. LEXIS 46322, at *39 (S.D.N.Y. Apr. 26, 2011) (quoting Ciccone v. Hersh, 530 F. Supp. 2d 574, 577 (S.D.N.Y. 2008) (in turn quoting Flickinger v. Harold C. Brown & Co., 947 F.2d 595, 599 (2d Cir. 1991))).

Here, the Court finds the Plaintiff has sufficiently pled both of these causes of action. First, the Plaintiff alleged Quinto made several misrepresentations or omissions of material fact to Shaw knowing they were false, with the intention of inducing Shaw's reliance. The Plaintiff further alleged that Shaw reasonably relied on these misrepresentations and was thus injured. Second, the Plaintiff alleged that Quinto, as Shaw's agent, owed Shaw a fiduciary duty and/or duty of loyalty. As such, Quinto was required to advise Shaw of all material facts related to the Shaw East Meadow Branch. In addition, he was required to advise Shaw on all material facts related to the Shaw East Meadow Branch and to operate it for Shaw's benefit. However, the Plaintiff alleged that Quinto failed to disclose the relevant facts, thereby breaching his fiduciary duty and causing the continued operation of the Shaw East Meadow Branch for the personal benefit of QUinto, Luca and Giaccone at Shaw's expense. Accordingly, the Plaintiff has alleged facts in its Complaint sufficient to state a claim for both common law fraud and breach of fiduciary duty under New York State law and is therefore entitled to the entry of default judgment against Quinto on these claims.

**D. Damages**

In light of the Plaintiff's January 25, 2012 letter and in the interest of judicial economy, the Court reserves decision as to the amount of damages, if any, the Plaintiff is entitled to from the defaulting Defendants until the time of trial of this action.

10

## III. CONCLUSION

For the foregoing reasons, the Court (1) vacates its December 21, 2012 referral of this matter; (2) grants the Plaintiff's motion for a default judgment and enters a default against the Defendants Donato Quinto; Shaw Elite, LLC; Shaw Operations, LLC and SPM Agency Ltd; and (3) reserves decision as to the issue of damages until the time of trial of this action.

**SO ORDERED.**
Dated: Central Islip, New York
February 21, 2013

                                                    */s/ Arthur D. Spatt*
                                                    ARTHUR D. SPATT
                                                 United States District Judge